UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, AND 401(K) SAVINGS PLAN, TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL TRAINING FUND,<br><br>Plaintiffs,<br><br>-against-<br><br>RECINE & SONS PLUMBING & HEATING, INC. and ANGELO RECINE, *individually*,<br><br>Defendant. | 24 CV<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Amended Complaint, respectfully allege as follows:

**PRELIMINARY STATEMENT**

1. This case is a civil action brought pursuant to Sections 404, 406, 409, 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1132, 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, by multiemployer employee-benefit funds, through their respective Boards of Trustees, to collect delinquent employer contributions and related relief from Defendant Recine & Sons Plumbing & Heating Inc. (the "Company") and from Defendant Angelo Recine (the "Owner" or "A. Recine") (the Company, together with the Owner, the "Defendants") on account of his breach of fiduciary duty owed to Plaintiffs.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because the Funds (as defined below) reside or may be found in this district.

## THE PARTIES

4. Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan (the "Local 1 Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c)(5) of the LMRA, 29 U.S.C § 186(c)(5). The Local 1 Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C § 1002(3), and are administered at 50-02 5th Street, Long Island City, New York 11101.

5. Plaintiffs Plumbers Local Union No. 1 Welfare Fund (the "Welfare Fund") is the designated Collection Agent for the Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") and the Plumbing Industry Promotion Fund of New York City. The Union is, and at all relevant times was, a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. The Union represents, and at all relevant times represented, employees in an industry affecting commerce as defined in section 50 of the LMRA, 29 U.S.C. § 142.

6. Plaintiff Trustees of the United Association National Pension Fund (the "UANPF") are employer and employee trustees of a multiemployer employee pension benefit plan as those terms are defined in sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37). The UANPF is established and maintained by a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. The UANPF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

7. Plaintiff Trustees of the International Training Fund (the "ITF," together with the UANPF, the "National Funds," the Local 1 Funds, together with the National Funds, the "Funds") are employer and employee trustees of a multiemployer employee pension benefit plan as those terms are defined in sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37). The NPF is established and maintained by a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. The ITF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

8. Defendant Recine & Sons Plumbing & Heating Inc. was and is a for-profit company organized and established under the laws of the State of New York duly authorized to conduct business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 602(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. The Company maintains its principal place of business at 2029 Yates Avenue, Bronx, New York 10461.

9. The New York Department of State Division of Corporations lists "THE CORPORATION" with an address of 2029 Yates Avenue, Bronx, New York 10461, as the post office address to which the Secretary of State shall mail a copy of any process against the Company served upon the Secretary of State by personal delivery.

10. The New York Department of State Division of Corporations lists "ANGELO RECONE" as the Company's Chief Executive Officer, with an address of 2029 Yates Avenue, Bronx, New York 10461.

11. Upon information and belief, the Company may also maintain business addresses located at 2024 Williambridge Road, Bronx, NY 10461 and 1710 Bronxdale Avenue, Bronx, New York 10462.

12. Angelo Recine is an individual and is the owner, principal, and Chief Executive Officer of the Company. Angelo Recine resides at 1 Orchard Road, Katonah, New York 10536.

## STATEMENT OF FACTS

*The Collective Bargaining Agreement*

13. At all relevant times, the Company was a party to or otherwise bound by a collective bargaining agreement, project labor agreement, and/or participation agreement with the Union ("CBA").

14. Under the CBA, employers agree "to be bound by the provisions of the Trust Agreements pertaining to Pension, (including the [UANPF],…[and the] Plumbers Local Union No. 1 Welfare…Trade Education…401(k) Savings Plan and *any other established funds…*" (the "Trust Agreements") (emphasis added).

15. On December 31, 2019, the Additional Security Benefit Fund ("ASB-C Fund") was merged into the Welfare Fund.

16. The Trust Agreements permit the Funds to establish policies, rules, and procedures for the purposes of collecting unpaid contributions to the various benefit funds.

17. Each Trust Agreement states that the assets of that plan include "sums of money that have been or will be paid or which are due and owing to the Funds by the Employers as required by the [CBA]."

18. Pursuant to the Trust Agreements, the Local 1 Funds adopted a Policy for the Collection of Delinquent Fringe Benefit Employer Contributions (the "Fringe Benefit Collection

4

Policy") and a Joint Policy for Collection of Delinquent Employee Contributions and Participant Amounts (the "401(k) Savings Plan Collection Policy," together with the Fringe Benefit Collection Policy, and the collection policies of the National Funds (defined *infra*) the "Collection Policies").

19. Likewise, pursuant to the Trust Agreements, the National Funds promulgated Delinquency procedures for the collection of contributions due to the UNAPF and a Collection Policy/Procedures for the collection of contributions due to the ITF (collectively, the "National Fund Collection Policies," together with the Fringe Benefit Collection Policy and the 410(k) Savings Plan Collection Policy, the "Collection Policies").

20. The CBA, Trust Agreements, and Collection Policies require the Company to make to make specified hourly contributions to the Funds, and to remit other specified amounts, including Union dues withheld from its employees' pay to the Funds in connection with all plumbing work performed on behalf of the Company within the five boroughs of the City of New York ("Covered Work").

21. Under the CBA, Trust Agreements, and Collection Policies, the Company is required to submit reports to the Funds detailing the number of hours of Covered Work performed by its employees ("remittance reports") as well as corresponding benefit contributions to the Funds no later than the 20th day of the month following the end of each calendar month.

22. Similarly, per the 401(k) Savings Plan Collection Policy, employers are required to remit 401(k) Salary Deferrals and the supporting remittance report within seven (7) business days after the end of the payroll period from which the amounts were deducted from the wages of the employee.

5

23. The CBA, Trust Agreements, and Collection Policies require employers to furnish their books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with its required benefit fund contribution obligations under the CBA.

24. Under the Local 1 Fund Collection Policies and Trust Agreements, where an employer is two or more months delinquent in making its contributions and has not submitted remittance forms showing the number of hours of Covered Work performed by its employees, the Funds may project as the amount of the delinquency the greater of (a) the average monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the employer for the last twelve (12) months for which payments and reports were submitted. Such an estimation may be sued as a determination of payments due for each delinquent month and may be used for the purpose of any lawsuit and no other proof need be provided by the Trustees to any court to compute the total payments due for the delinquent months, exclusive of liquidated damages, interest, and attorneys' fees and costs.

25. Under the National Fund Trust Agreements

> [w]here an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has failed to submit regular documents showing the Employees who worked for the Employer and the hours worked, the Trustees may project as the amount of the delinquency (a) the average of the monthly payments actually made by the Employer for the last three (3) months for which the payments were made, or (b) the average of monthly payments made by the Employer for the last twelve (12) months for which payments were made, or (c) the average of the monthly payment documented by the remittance reports submitted by the Employer without payments for the last three (3) months, or (d) the average of the monthly payment documented by the remittance reports submitted by the Employer without payments for the last twelve (12) months, or (e) the average monthly contributions determined by (i) certified payroll records required under any applicable federal, state or local law, or (ii) an audit of the payroll and wage records of an Employer conducted

under Section 4 of this Article, or (f) the number of Employees employed by the Employer under the Collective Bargaining Agreement as determined by the Union multiplied by the contribution rate multiplied by the workweek established in the Collective Bargaining Agreement. Such projections of delinquency may be made in lieu of demand for production of payroll documents or upon failure to furnish such documents, in lieu of an audit. The projection may be used as a determination of payments due for each delinquent month, and may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit, and no other proof need be furnished by the Trustees to any court…to compute the total payments due from the Employer for all delinquent months…"

26. Under the documents and instruments governing the Local 1 Funds including their Trust Agreements and Collection Policies, employers whose contributions are delinquent are liable for the amount of delinquent contributions, interest thereon at an annual rate of ten percent (10%), liquidated damages of twenty percent (20%) of the principal amount due, attorneys' fees, audit fees, and other collection costs.

27. Similarly, under the 401(k) Collection Policy, employers who fail to remit deferrals to the Local 1 Funds "within seven (7) business days after the end of the payroll period from which the deferrals were made and deducted from the wages of the employees shall cause the employer to be liable for the delinquent deferrals, plus interest thereon calculated at the rate of ten percent (10%) per annum calculated from the due date and compounded annually. The employer shall also be liable for the greater of lost earnings or restoration profits, as defined by the Voluntary Fiduciary Correctio Program of the U.S. Department of labor, 65 Fed. Reg. 14164 (March 15, 2000), in which no event shall be less than the underpayment rate defined in the Internal Revenue Code section 6621(a)(2), and which shall be determined by application of the DOL VFCP Online Calculator…The Board may also assess liquidated damages on the delinquent deferrals at the rate of twenty percent (20%) of the amount due."

7

28. Under the documents and instruments governing the UANPF, including its Trust Agreements and the collection policies promulgated in accordance therewith, employers who owe delinquent contributions are liable for the amount of delinquent contributions, interest thereon at the annual rate of twelve percent (12%), liquidated damages of ten percent (10%) of the principal amount due, and attorneys' fees, audit fees and other collection costs.

29. Under the documents and instruments governing the ITF, including its Trust Agreements and the collection policies promulgated in accordance therewith, employers who owe delinquent contributions are liable for the amount of delinquent contributions, interest thereon at the annual rate of twelve percent (12%), liquidated damages of twenty percent (20%) of the principal amount due, and attorneys' fees, audit fees and other collection costs.

*<u>The Company's Delinquent Reports and Contributions</u>*

*Local 1 Funds*

30. The Company submitted unfunded remittance reports to the Funds detailing the number of hours of Covered Work performed by its employees for the period April through December 2023.

31. Based on the unfunded remittance reports, the Local 1 Funds determined that the Company failed to remit contributions to the Local 1 Funds in the amount of at least $58,296.84 for the period April through December 2023.

32. The Company also owes the Local 1 Funds late payment interest of $317.52 as a result of remitting contributions for January and March 2023 beyond their respective due dates.

33. The Company also owes the Funds liquidated damages totaling $15,254.56 as a result of remitting contributions for February 2022 through March 2023 beyond their respective due dates.

*The National Funds*

34. The Company submitted unfunded remittance reports to the Funds detailing the number of hours of Covered Work performed by its employees for the period April through December 2023.

35. Based on the unfunded remittance reports, the National Funds determined that the Company failed to remit contributions to the National Funds in the amount of at least $11,731.20 for the period April through December 2023.

### *Angelo Recine Breached his Fiduciary Duty to the Funds*

36. The CBA bound the Company to the terms of the Funds' Trust Agreements, which provide that the Funds' assets include not only money that employers have actually contributed to the Funds, but also benefit contributions owed by the employer under the CBA but not yet paid.

37. Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i), provides that a person is a fiduciary of an employee benefit plan to the extent he or she exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

38. Angelo Recine exercised operational control over some or all of the Company's assets including the Company's bank accounts, contracts, equipment, and other assets, which held assets of the Funds.

39. Angelo Recine was responsible for deciding whether to use assets in the possession of the Company to pay contributions to the Funds.

40. Angelo Recine exercised discretionary control and/or discretionary authority over the disposition of the Funds' assets by, among other things, causing the Company to fail to remit contributions to the Funds in accordance with the CBA.

41. Upon information and belief, while the Company owed contributions to the Funds, Angelo Recine caused the Company to use, divert, or expend its assets for purposes other than remitting contributions to the Funds, such as by transferring the Company's assets to himself.

42. Angelo Recine is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

43. Angelo Recine is a party in interest with respect to the Funds within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

44. By the foregoing acts and omissions, Angelo Recine failed to discharge his duty with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and for the exclusive purposes of providing benefits to the Funds' participants and their beneficiaries and defraying reasonable expenses of administering the Funds, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A).

45. By the foregoing acts and omissions, Angelo Recine failed to discharge his respective duty with respect to the Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).

46. By the foregoing acts and omissions, Angelo Recine caused assets of the Funds to be used by or for the benefit of a party in interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D).

47. By the foregoing acts and omissions, Angelo Recine caused the Funds to suffer substantial monetary losses.

48. Under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Angelo Recine is personally liable to the Funds for all such losses, plus all profits Angelo Recine has made and/or all earnings the Funds have lost as a result of such acts and omissions.

**FIRST CLAIM FOR RELIEF AGAINST THE COMPANY**
*Unpaid Contributions Under 29 U.S.C. § 1145*

49. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

50. Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."

51. The CBA requires the Company to make contributions to Plaintiffs for all Covered Work it performs within the trade and geographical jurisdiction of the Union.

52. The Company owes the Local 1 Funds contributions of at least $58,296.84 for the period April through December 2023

53. The Company owes the National Funds contributions of at least $11,731.20 for the period April through December 2023.

54. Pursuant to the CBA and ERISA sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C. §§ 1132(a)(3), (g)(2) and 29 U.S.C. § 1145, the Company is liable to Plaintiffs for: (1) unpaid contributions in the amount of at least $58,296.84 to the Local 1 Funds for the period April through December 2023; (2) unpaid contributions in the amount of at least $11,731.20 to the National Funds for the period April through December 2023; (3) interest[1] on the delinquent contributions

---

[1] At the rate of ten percent (10%) per year, compounded annually, to the Local 1 Funds and at the rate of twelve percent (12%) per year to the National Funds.

11

adjudged to be due and owing; (4) liquidated damages[2] on the principal amount of contributions adjudged to be due and owing; (5) reasonable attorneys' fees and costs incurred by Plaintiffs in this action; and (6) such other legal or equitable relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF AGAINST THE COMPANY
*Violation of Collective Bargaining Agreement Under 29 U.S.C. § 185*

55. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes the Plaintiffs, as third-party beneficiaries to the CBA, to file a federal lawsuit regarding an employer's violation of that CBA.

57. The Company violated the terms of the CBA when it failed to timely submit contributions to the Funds for the period April through December 2023.

58. The Company violated the terms of the CBA when it failed to timely remit benefit contributions for the periods January and March 2023 resulting in the accrual of late payment interest of $371.52.

59. The Company violated the terms of the CBA when it failed to timely remit contributions to the Funds for the period February 2022 through March 2023 resulting in the accrual of liquidated damages of $15,254.56.

60. As a result of the Company's violations, Plaintiffs are entitled to all delinquent contributions, interest, liquidated damages, lost earnings or restoration profits, and attorneys' fees and costs and other equitable relief pursuant to section 301 of the LMRA, 29 U.S.C. § 185.

### PLAINTIFFS' THIRD CLAIM FOR RELIEF AGAINST ANGELO RECINE
**(Breach of Fiduciary Duty)**

---

[2] At the rate of twenty percent (20%) to the Local 1 Funds and ITF and at the rate of ten percent (10%) to the UANPF.

61. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62. Pursuant to the documents and instruments governing the Funds, the Funds' assets include delinquent amounts that the Company has not contributed but is required to contribute to the Funds pursuant to the CBA.

63. Angelo Recine is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

64. Angelo Recine is a party in interest with respect to the Funds within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

65. Angelo Recine is and was responsible for the Company's failure to remit required contributions to the Funds.

66. Angelo Recine breached his fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104, by, among other things, failing to discharge his duty with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

67. Upon information and belief, Angelo Recine breached his respective fiduciary duty under Section 406, 29 U.S.C. § 1106, of ERISA by, among other things, causing assets of the Funds to be used by or for the benefit of a party in interest.

68. Accordingly, pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Angelo Recine is personally liable to the Funds for: (1) all losses incurred by the Funds as a result of his breach of fiduciary duty, as identified during the course of this litigation; (2) all profits Angelo Recine has made and/or all earnings the Funds have lost as a result of Angelo Recine's unlawful

acts and omissions, in an amount to be determined at trial; and (3) attorneys' fees and costs incurred by the Funds in this action.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

i. Award judgment in favor of Plaintiffs and against the Company for its failure to timely remit contributions and other related payments to the Funds as required by the CBA and against Angelo Recine for breach of fiduciary duty ;

ii. On Plaintiffs' First Claim for Relief, (1) order The Company to pay the Local 1 Funds: (a) contributions of at least $58,296.84 for the period April through December 2023; (b) interest on the delinquent contributions adjudged to be due and owing at an annual rate of ten percent (10%); (c) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions due and owing; (2) to the National Funds: (a) contributions of at least $11,731.20 for the period April through December 2023; (b) interest on the delinquent contributions adjudged to be due and owing at the annual rate of twelve percent (12%) per annum; and (c) liquidated damages in the amount of ten percent (10%) to the UANPF and twenty percent (20%) percent to the ITF; and (3) to the Funds: (a) attorneys' fees and costs and collections costs incurred by the Plaintiffs;

iii. On Plaintiffs' Second Claim for Relief, (1) order the Company to pay the Local 1 Funds: (a) contributions of at least $58,296.84 for the period April through December 2023, (b) interest on the delinquent contributions, (c) liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions, (d) late payment interest of $371.52, and (e) liquidated damages on prior late paid contributions of $15,254.56; (2) to the National Funds: (a) contributions of at least $11,731.20 for the periods April through December 2023, (b) interest on the delinquent contributions adjudged to be due and owing at the annual rate of twelve percent

(12%) per annum, and (c) liquidated damages in the amount of ten percent (10%) percent to the UANPF and twenty percent (20%) to the ITF; and (3) to the Funds: (a) attorneys' fees and costs, audit costs, and collections costs incurred by the Plaintiffs;

 iv. On Plaintiffs' Third Claim for Relief, issue an order finding that Angelo Recine breached his respective fiduciary duty to Plaintiffs and holding him liable to Plaintiffs for: (i) all losses incurred by the Funds as a result of Angelo Recine's breach of his respective fiduciary duty, including the damages found to be due during the course of this litigation; (ii) all profits Angelo Recine has made and/or all earnings the Funds have lost as a result of Angelo Recine's unlawful acts and omissions in an amount to be determined at trial; and (iii) attorneys' fees and costs incurred in this action;

 v. Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York  
   February 8, 2024

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:   /s/  
Adrianna R. Grancio, Esq.  
40 Broad Street, 7th Floor  
New York, NY 10004  
Tel: (212) 943-9080  
agrancio@vandallp.com  
*Attorneys for Plaintiffs*