UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, TRADE
EDUCATION FUND, 401(K) SAVINGS
PLAN, TRUSTEES OF THE UNITED                    REPORT AND
ASSOCIATION NATIONAL PENSION                    RECOMMENDATION
FUND, and TRUSTEES OF THE                       24 CV 986 (AMD)(RML)
INTERNATIONAL TRAINING FUND,

              Plaintiffs,

    -against-

RECINE & SONS PLUMBING &
HEATING, INC. and ANGELO RECINE,
individually,

             Defendants.
-------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated June 17, 2024, the Honorable Ann M. Donnelly, United States District Judge, referred plaintiffs' motion for a default judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that plaintiffs' motion be granted.

## BACKGROUND AND FACTS

        Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan (the "Local 1 Funds"), Trustees of the United Association National Pension Fund (the "UANPF"), and Trustees of the International Training Fund (the "ITF," and together with the UANPF, the "National Funds") (collectively, "plaintiffs" or the "Funds") brought this case on February 8, 2024, asserting claims under section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions to a group of employee benefit funds, and enforce

other collectively bargained obligations. (See Complaint, dated Feb. 8, 2024 ("Compl."), Dkt. No. 1.) Defendants Recine & Sons Plumbing & Heating, Inc. (the "Company") and its owner, Angelo Recine ("Recine," together with the Company, "defendants"), failed to answer or move with respect to the complaint, and the Clerk of the Court noted their defaults on April 3, 2024. (See Clerk's Certificate of Default, dated Apr. 3, 2024, Dkt. No. 9.)

From February 2, 2012 to the present, the Company has been bound to a series of collective bargaining agreements ("CBAs") with Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"). (Declaration of Wendy Salvatierra, dated June 13, 2024 ("Salvatierra Decl."), Dkt. No. 12, ¶¶ 4-13; Exs. A-F.) The CBAs require the Company to make certain monetary contributions to the Funds for all plumbing work performed in the trade and geographical jurisdiction of the Union. (Id.)

The Funds are governed by trust agreements (collectively, the "Trust Agreements"), which are incorporated by reference in the CBAs and are binding on the Company. (See id. ¶¶ 17-18, Exs. I, J, and K; Exs. E-F, Art. XV; Declaration of Toni C. Inscoe, dated June 13, 2024 ("Inscoe Decl."), Dkt. No. 13, ¶¶ 4, 11-12; Ex. P, Art. V, § 4(aa); Ex. Q, Art. V, § 5 (dd); Exs. R-S.) The Trust Agreements permit the Funds to establish policies, rules, and procedures for collecting unpaid contributions and other amounts due to the various benefit funds. (Salvatierra Decl., Ex. I, Art. V, § 4(x); Ex. J, Art. V, § 4(bb); Ex. K, Art. V, § 4(x); Inscoe Decl. ¶ 6, Exs. P-Q, Art. II, § 2.) Pursuant to the Trust Agreements, the Funds adopted policies for the collection of delinquent fringe benefit employer contributions (the "Collection Policies"). (Salvatierra Decl. ¶ 20, Ex. L; Inscoe Decl. ¶ 12, Exs. R-S.)

According to the CBAs, Trust Agreements, and Collection Policies, the Company is required to submit reports to the Funds detailing the number of hours of covered work performed by its employees ("remittance reports"), as well as the corresponding benefit contributions to the Funds, by the twentieth day of the month following the month in which the hours were worked. (Salvatierra Decl. ¶ 23, Exs. E-F, Art. VI; Exs. I-K Art. VI, § 4; Ex. L, Art. II, ¶ 1.) Contributions are calculated by taking the number of hours of covered work performed during the reporting period and multiplying by the applicable rates set forth in the CBAs. (Id. ¶ 24, Exs. B-F, Art. IV.)

As explained in more detail below, the Company failed to remit contributions to the Local 1 Funds for the period of April through December 2023, totaling $58,296.84. (Id. ¶¶ 28-29, Ex. M.) The Company also remitted contributions for February 2022 through March 2023 beyond their respective due dates, resulting in the assessment of liquidated damages totaling $15,254.56. (Id. ¶ 31, Ex. N.) In addition, for January and March 2023, the Company remitted contributions beyond their respective due dates, resulting in the accrual of late payment interest of $371.52. (Id. ¶ 30, Ex. N.) Finally, the Company failed to remit contributions in the amount of $11,731.20 to the National Funds for work performed from April through December 2023. (Inscoe Decl. ¶ 15, Ex. T.) Plaintiffs seek to recover delinquent contributions, liquidated damages, interest, administrative fees, attorney's fees, and costs. (Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated June 14, 2024 ("Pls.' Mem."), Dkt. No. 15, at 18-19.)

**DISCUSSION**

    A. <u>Default Standard</u>

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. <u>BASF Corp. v. Original Fender Mender, Inc.</u>, No. 23 CV 2796, 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023), <u>report and recommendation adopted</u> (Jan. 9, 2024) (stating that a court may not enter a default judgment "unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.") Here, plaintiffs have demonstrated that they properly served defendants with the summons and complaint. (<u>See</u> Affidavit of Service of Edward J. Bowmaker, sworn to Feb. 13, 2024, Dkt. No. 5; Proof of Service of Robert Trainor, dated Feb. 26, 2024, Dkt. No. 7; Affidavit of Service of Abigail Frankel, sworn to Feb. 15, 2024, Dkt. No. 14-4.) Plaintiffs have also demonstrated that they served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Civil Rule 55.2(a). (<u>See</u> Certificate of Service of Adrianna R. Grancio, Esq., dated June 18, 2024, Dkt. No. 16.)

4

B. <u>Standing</u>

Standing is an "irreducible constitutional minimum." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Therefore, the court must evaluate whether plaintiffs have standing even where standing is not challenged. <u>See</u> <u>Garnet v. Ramos Bros. Inc.</u>, No. 16 CV 2792, 2017 WL 590323, at *1 (E.D.N.Y. Feb. 13, 2017) (citation omitted). "To establish standing, a plaintiff must prove: '(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.'" <u>Hennessy by & through Hennessy v. 194 Bedford Ave. Rest. Corp.</u>, No. 21 CV 5434, 2022 WL 4134502, at *2 (E.D.N.Y. Aug. 8, 2022) (quoting <u>Kreisler v. Second Ave. Diner Corp.</u>, 731 F.3d 184, 187 (2d Cir. 2013)).

"ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans." <u>Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr.</u>, 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a) (29 U.S.C. § 1144(a))). "'ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans.'" <u>Id.</u> (quoting <u>Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.</u>, No. 10 CV 322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), <u>report and recommendation adopted</u>, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); 29 U.S.C. § 1132(a)(3) (permitting fiduciaries of a plan to bring an ERISA action)). Here, plaintiffs are fiduciaries within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21), and the Funds are multi-employer/employee benefit plans under ERISA. <u>See</u> <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 40 (2d

5

Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA); Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc., No. 13 CV 1739, 2013 WL 5637492, at *4 (E.D.N.Y. Oct. 15, 2013) ("Section 502 of ERISA (29 U.S.C. § 1132) creates jurisdiction, endowing plan trustees with standing to enforce section 515."); (Compl. ¶¶ 1, 4-7.)

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA confers standing on unions and employee benefit funds. See Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp., 954 F. Supp. 2d 250, 256 (S.D.N.Y. 2013) (employee benefit funds have standing to sue under LMRA for employer's failure to make contributions required under collective bargaining agreement with union) (citing 29 U.S.C. § 185(a)); Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 generally grants unions standing to vindicate employee rights pursuant to a collective bargaining agreement[.]"). Accordingly, plaintiffs have established their standing under both ERISA and the LMRA.

C. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable

inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id.

Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145.  In addition, section 301(a) of the LMRA authorizes the court to enforce the obligations imposed by the applicable collective bargaining agreement.  (Compl. ¶¶ 30-35; Salvatierra Decl. ¶¶ 28-31; Inscoe Decl. ¶ 15.)  See 29 U.S.C. 185(a); Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc., No. 18 CV 2475, 2021 WL 7208997, at *3 (E.D.N.Y. Mar. 15, 2021).  Here, plaintiffs' undisputed allegations establish that the Company is liable to plaintiffs under both ERISA and the LMRA.  See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11 CV 5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) (citations omitted) ("Plaintiffs allege that defendant failed to make contributions to the Funds. . . .Therefore, defendant's failure . . . constitutes a violation of ERISA. . . .[P]laintiffs allege that defendant failed to remit dues to Local 1 and make required contributions to [the Labor Management Relations Committee]. . . . [T]hus, defendant is liable under Section 301 of the LMRA.").

In addition, plaintiffs seek to hold defendant Recine personally liable for the Company's delinquent contributions to the Funds because he breached his fiduciary duty to the Funds under ERISA.  (Pls.' Mem. at 15-17; Compl. ¶¶ 12, 36-48.)  "A fiduciary, under ERISA, is someone who exercises any discretionary authority or discretionary control respecting

7

management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets." Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., 779 F.3d 182, 188 (2d Cir. 2015) (internal quotation omitted) (alterations in original). "To establish the personal liability of a fiduciary, a plaintiff must show 'both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him [or her] a fiduciary.'" Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp., No. 19 CV 2600, 2021 WL 3861762, at *3 (E.D.N.Y. Aug. 30, 2021) (quoting Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc., No. 16 CV 6935, 2019 WL 343243, at *3 (E.D.N.Y. Jan. 28, 2019); In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009) (alterations in original)).

As to the first requirement, sums of money due and owing to an employee benefit plan constitute plan assets when the plan documents specifically designate them as such. See Moulton Masonry, 779 F.3d at 189 (finding individual defendant liable as ERISA fiduciary where "contributions were designated as plan assets under the trust documents"); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 2644774, at *4 (E.D.N.Y. June 13, 2014) (finding personal liability for delinquent contributions to benefit funds where the funds' trust agreements defined unpaid contributions as plan assets). Here, the Trust Agreements explicitly state that plan assets include "sums of money . . . which are due and owing to the Fund by the Employers as required by the applicable collective bargaining agreement." (See Compl. ¶ 17; Salvatierra Decl. ¶ 21; Exs. I-J, Art. II, Sec. 2; Ex. K, Art. II, Sec. 4; Inscoe Decl. ¶ 6; Exs. P-Q, Art. II, § 2.) Therefore, the unpaid contributions constitute plan assets.

8

As to the second requirement, the well-pleaded allegations in the complaint establish that Recine exercised a level of operational control over the Funds' plan assets sufficient to make him a fiduciary. (See Compl. ¶¶ 12, 36-48.) Plaintiffs allege that, as the owner, principal, and chief executive officer of the Company, Recine had full control over the Company's assets, including the companies' bank accounts, contracts, equipment, and other assets, and was responsible for deciding whether to use the assets in the Company's possession to pay contributions to the Funds. (Id.)

Thus, plaintiffs have established that Recine is a fiduciary pursuant to section 3(21)(A)(i) of ERISA. See Moulton Masonry, 779 F.3d at 189 (finding fiduciary liability where a defendant determined which creditors the corporate defendant would pay, exercised control over money due and owing to plaintiff funds and failed to remit employer contributions under his control); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Bass Plumbing & Heating Corp., No. 13 CV 6797, 2014 WL 6886107, at *4-5 (E.D.N.Y. Dec. 8, 2014) (finding defendant personally liable for breach of fiduciary duty in light of his authority to determine which obligations the defendant company paid).

D. Damages

Section 409(a) of ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses . . . resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary." 29 U.S.C. 1109(a). In determining the amount of plan losses resulting from a breach of fiduciary duty, the Second Circuit has consistently found that an individual defendant is liable for the full amount of the delinquent

9

benefit contributions, plus any prejudgment interest that has accrued, but not for liquidated damages. See Moulton Masonry, 779 F. 3d at 190; see also Local 1992 Pension Fund v. A-G Elec. Supply Co. Inc., No. 21 CV 3441, 2024 WL 872467, at *6 (E.D.N.Y. Feb. 6, 2024), report and recommendation adopted, 2024 WL 866235 (E.D.N.Y. Feb. 28, 2024) ("liquidated damages do not serve to make good to the plan any losses and do not constitute appropriate equitable relief as recognized by the common law of trusts[,]" and, accordingly, courts in this Circuit have declined to award liquated damages against individual fiduciaries in ERISA cases) (citing Moulton Masonry, 779 F.3d at 190). Accordingly, I respectfully recommend that Recine be held liable for breaching his fiduciary duties to the Funds in the amount of the unpaid benefit contributions plus prejudgment interest at the rates set forth in the CBAs and other governing documents.

Although the court accepts factual allegations in the complaint for purposes of determining liability, the court must ensure there is proof in the record to support a damages award. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation") (citations omitted); Overcash v. United Abstract Group, Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) ("[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought") (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff[s] to establish [their] entitlement to recovery." Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, 973 F.2d at 158).

Under ERISA, the damages recoverable for delinquent contributions are enumerated in section 1132(g)(2), which provides that the court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of-
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). I will address each category in turn.

1. <u>Delinquent Contributions</u>

    (a) <u>The Local 1 Funds</u>

The Company submitted unfunded remittance reports to the Local 1 Funds detailing the number of hours of covered work performed by its employees for April through December 2023. (See Salvatierra Decl. ¶ 28, Ex. M.) Based on those unfunded remittance reports, the Funds determined that the Company failed to remit contributions totaling $58,296.84 for that period. (<u>Id.</u>) Having reviewed plaintiffs' supporting documentation, I respectfully recommend that the Local 1 Funds be awarded $58,296.84 in unpaid employee benefit contributions from defendants.

    (b) <u>The National Funds</u>

The Company submitted unfunded remittance reports to the National Funds detailing the number of hours of covered work performed by its employees for April through December 2023. (See Inscoe Decl. ¶ 14, Ex. T.) Based on the unfunded remittance reports submitted by the Company, the National Funds determined that the Company failed to remit contributions of $11,419.20 to the UANPF and $312 to the ITF for a total delinquency of

11

$11,731.20 for the period of April through December 2023. (Id.) Having reviewed plaintiffs' supporting documentation, I respectfully recommend that the National Funds be awarded $11,731.20 in unpaid employee benefit contributions from defendants.

2. <u>Interest, Liquidated Damages, and Administrative Fees</u>

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). "Under the LMRA, it is within the court's discretion to award prejudgment interest." <u>Finkel v. INS Elec. Servs. Inc.</u>, No. 06 CV 4862, 2008 WL 941482, *7 (E.D.N.Y. Apr. 4, 2008). In addition, the court may award "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

Under the documents and instruments governing the Funds—including the CBAs, Trust Agreements, and Collection Policies—employers whose contributions are delinquent, such as the Company, are liable to the Funds for the amount of delinquent contributions, interest calculated from the twentieth day following the due date and compounded annually, plus liquidated damages. (<u>See</u> Salvatierra Decl. ¶ 25, Exs. E-F, Art. VI; Exs. I-K, Art. VI, § 6; Ex. L, Art. II; Inscoe Decl. ¶ 13.) The Local 1 Fund Collection Policies also allow the Funds to assess a $100 administrative fee for every month for which the employer failed to pay contributions. (<u>See</u> Salvatierra Decl. ¶ 27, Ex. L, Art. II, ¶ 6.)

(a) <u>The Local 1 Funds</u>

Per the CBAs, Trust Agreements, and Collection Policies, interest is charged at the annual rate of ten percent for the Local 1 Funds. (<u>Id.</u> ¶ 25.) Accordingly, defendants are liable to the Local 1 Funds for interest on the delinquent contributions for the period of April through December 2023, at the rate of ten percent per annum, compounded annually, through the

12

date of judgment.[1] Additionally, the Company remitted contributions for January and March 2023 beyond their respective due dates, resulting in the accrual of late payment interest of $371.52. (See id. ¶ 30, Ex. N.)

Liquidated damages are calculated as twenty percent of the principal delinquency, totaling $11,659.37 ($58,296.84 × .2). (See id., Ex. O.) The Company also remitted contributions for February 2022 through March 2023 beyond their respective due dates, resulting in the assessment of liquidated damages totaling $15,254.56. (See id. ¶ 31, Ex. N.) Finally, since the Company has failed to submit contributions to the Local 1 Funds for nine months, the administrative fees total $900. (Id. ¶ 36.)

(b) The National Funds

Per the CBAs, Trust Agreements, and Collection Policies, interest is charged at the annual rate of twelve percent for the UANPF and the ITF. (Inscoe Decl. ¶ 16, Ex. U.) I therefore recommend that interest on the unpaid National Fund contributions be awarded at that rate through the date of judgment.[2]

Liquidated damages are calculated at the rate of ten percent per annum for the UANPF and at the rate of twenty percent per annum for the ITF. (Id. ¶ 18.) Accordingly, the

---

[1] Interest is calculated by multiplying the contributions due per month by the annual interest rate of ten percent, as provided for in the CBAs and Collection Policies, and then dividing that figure by 365 to yield the daily interest rate. For example, for April 2023, contributions of $5,979.16 due are multiplied by the ten percent interest rate to yield a total yearly interest of $597.92. That figure is then divided by 365 to render the daily interest rate of $1.64. The daily interest rate is then multiplied by the number of days the contributions are late. April 2023 contributions were due on May 20, 2023, and interest is calculated from the day following the due date. Since April through December 2023 contributions remain outstanding, interest on those contributions must be calculated through the date of judgment. (See Salvatierra Decl., Ex. O.)

[2] Detailed per diem interest calculations are contained in Exhibit U to the Declaration of Toni C. Inscoe, administrator of the UANPF. (See Inscoe Decl., Ex. U.)

13

Company is liable to the UANPF for liquidated damages in the amount of $1,141.92 ($11,419.20 × .1) and to the ITF in the amount of $62.40 ($312 × .2), for a total of $1,204.32. (Id. ¶ 18, Ex. U.)

### 3. Attorney's Fees and Costs

Attorney's fees and costs are mandatory under ERISA. See 29 U.S.C. § 1132(g)(2)(D); see also Mason Tenders Dist. Council v. Aurash Const. Corp., No. 04 CV 2427, 2006 WL 647884, at *2 (S.D.N.Y. Mar. 15, 2006) ("When a plaintiff prevails in an ERISA action for unpaid contributions, ERISA section 502(g)(2)(D) mandates an award of reasonable attorney's fees and costs of the action, to be paid by the defendant.") (quotation marks and citation omitted). The CBAs, Trust Agreements, and Collection Policies also provide for plaintiffs' recovery of attorney's fees and costs. (Salvatierra Decl. ¶ 26, Exs. E-F, Art. VI; Ex. L, Art. II, ¶ 6; Inscoe Decl. ¶ 13, Exs. R, S.)

Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiffs have satisfied this requirement. (See Declaration of Adrianna R. Grancio, Esq., dated June 14, 2024 ("Grancio Decl."), Dkt. No. 14, Ex. AA.)

14

The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case."  Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiffs' counsel, Virginia & Ambinder, LLP ("V&A"), billed the Funds for the services of partner Adrianna R. Grancio at a rate of $410 per hour and legal assistants Eva Keating and Abigail Frankel at a rate of $155 per hour.  (See Grancio Decl. ¶¶ 13-14, Ex. AA.) In similar ERISA matters, courts in the Eastern District of New York have awarded fees in the range of $200 to $450 per hour for partners.  See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC, No. 24 CV 561, 2024 WL 4894771, at *15 (E.D.N.Y. Nov. 26, 2024); Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Tri-C Mech. Inc., No. 22 CV 1590, 2024 WL 4290823, at *15 (E.D.N.Y. Sept. 10, 2024), report and recommendation adopted, 2024 WL 4287353 (E.D.N.Y. Sept. 25, 2024); Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp., No. 23 CV 5856, 2024

15

WL 4314958, at *8 (E.D.N.Y. Aug. 19, 2024).  Thus, $410 per hour is within the range of rates recognized as reasonable in this district for a law firm partner.

However, the requested hourly rate of $155 per hour for legal assistants is higher than the rate typically awarded for legal assistants in this district.  See IKNA Constr. LLC, 2024 WL 4894771, at *16 (reducing hourly rate for V&A legal assistants to $90 per hour); Tri-C Mech. Inc., 2024 WL 4290823, at *15 (same); Finkel v. O.H. & M. Elec., Corp., No. 23 CV 1076, 2024 WL 4648136, at *6 (E.D.N.Y. Jan. 19, 2024) (reducing V&A legal assistant rate to $100 per hour).  I recommend awarding fees for services rendered by legal assistants at the reduced rate of $100 per hour.

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  Here, plaintiffs' counsel seeks compensation for slightly over fifteen hours of work.  (Grancio Decl. ¶ 16.)  These hours are well within the range of hours expended in similar default judgment cases.  See IKNA Constr., 2024 WL 4894771, at *17 (collecting cases).  I therefore recommend awarding plaintiffs $5,207 in attorney's fees ((11.7 × $410) + (4.1 × $100).

ERISA also provides for the recovery of costs associated with litigation commenced to recover unpaid fringe benefit contributions.  29 U.S.C. § 1132(g)(2)(D); see also

16

Finkel v. Firequench, Inc., No. 23 CV 4868, 2024 WL 320870, at *8 (E.D.N.Y. Jan. 29, 2024), report and recommendation adopted as modified, 2024 WL 4249224 (E.D.N.Y. Sept. 20, 2024) "The party requesting reimbursement of its costs, however, must provide the court with adequate documentation not only showing costs were incurred, but that they were paid." Finkel v. KLK Elec., Inc., No. 19 CV 4945, 2020 WL 3885739, at *4 (E.D.N.Y. June 25, 2020) (quotation marks and citation omitted). Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable. Moon v. Gab Kwon, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987)). Here, plaintiffs seek $578.73 in costs, representing the court filing fee plus process server fees and postage. (Grancio Decl. ¶ 17, Ex. AA, BB.) I find these costs reasonable and sufficiently documented, and I therefore recommend that plaintiffs be awarded $578.73 in costs.

Defendant Recine is jointly and severally liable for plaintiffs' attorney's fees and costs. See Local 1992 Pension Fund v. A-G Elec. Supply Co., No. 21 CV 3441, 2024 WL 872467, at *8 (E.D.N.Y. Feb. 6, 2024), report and recommendation adopted, 2024 WL 866235 (E.D.N.Y. Feb. 28, 2024) (because court had already found a basis for individual liability, plaintiffs were entitled to an award of attorney's fees from the individual defendant); Goodwin v. Hawker Dayton Corp., No. 19 CV 4284, 2019 WL 6223955, at *8 (S.D.N.Y. Nov. 22, 2019), report and recommendation adopted, 2019 WL 6729197 (S.D.N.Y. Dec. 10, 2019) (finding individual defendant jointly and severally liable for attorney's fees and costs); Upstate New York Eng'rs Health Fund v. Oneidaview Pile Driving, Inc., No. 15 CV 512, 2017 WL 1483446, at *5 (N.D.N.Y. Apr. 25, 2017) (same).

## CONCLUSION

For the reasons stated above, I respectfully recommend that the Local 1 Funds be awarded $86,482.29, representing delinquent contributions of $58,296.84 for April through December 2023; liquidated damages on delinquent contributions totaling $11,659.37; $900 in administrative fees; accrued and unpaid late payment interest of $371.52; and accrued and unpaid liquidated damages of $15,254.56. I further recommend that the Local 1 Funds receive interest on the delinquent contributions at the rate of ten percent (10%) per annum through the date of judgment, plus mandatory post-judgment interest at the statutory rate. Additionally, I recommend that the National Funds be awarded $12,935.52, representing $11,731.20 in unpaid contributions and $1,204.32 in liquidated damages. I further recommend that the National Funds be awarded additional interest on the delinquent contributions at the rate of twelve percent (12%) per annum through the date of judgment, plus mandatory post-judgment interest at the statutory rate. Finally, I recommend that plaintiffs be awarded $5,207 in attorney's fees and $578.73 in costs.

Plaintiffs' counsel is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of the date of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge